## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW JERSEY CARPENTERS HEALTH FUND, On Behalf of Itself and All Others Similarly Situated, | Docket No. 08-cv-5653 (PAC) |
| Plaintiff, | **ECF Case** |
| v. | |
| DLJ MORTGAGE CAPITAL, INC., CREDIT SUISSE MANAGEMENT, LLC F/K/A CREDIT SUISSE FIRST BOSTON MORTGAGE SECURTIES CORPORATION, ANDREW A. KIURA, THOMAS ZINGALLI, JEFFREY A. ALTABEF, MICHAEL A. MAROTT, EVELYN ECHEVARA, and CREDIT SUISSE SECURITIES (USA), LLC, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S AND THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI'S JOINT MOTION TO INTERVENE

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................. 1

II.    ARGUMENT ....................................................................................... 4

    A.    Intervention as a Matter of Right Under Rule 24(a) Should Be
         Granted............................................................................................ 4

         1.    Miss. PERS has a significantly protectable interest........................ 4

         2.    The Court's standing ruling necessitates the addition of
              Miss. PERS ............................................................................... 6

         3.    The motion to intervene is timely filed.......................................... 6

              a)  Miss. PERS was on notice of its need to intervene since the
                    Court's Order ...........................................................................6

              b)  The other parties will not be prejudiced by Miss. PERS's
                    intervention ...............................................................................7

              c)  Denial of the Motion would cause considerable delay and
                    prejudice...................................................................................8

         4.    Without intervention Movants' interest will be impaired.............. 8

    B.    In the Alternative, Permissive Intervention Under Rule 24(b)
         Should Be Granted ...................................................................... 9

    C.    Miss. PERS's Motion was Appropriately Made in Response to the
         Court's Order ............................................................................. 10

          1.    *American Pipe* Tolling Applies ..................................................... 10

         2.    The issue of standing was not resolved until the Court's
              Order ...................................................................................... 15

III.    CONCLUSION.................................................................................. 18

Lead Plaintiff the New Jersey Carpenters' Health Fund ("Lead Plaintiff") and movant the Public Employees' Retirement System of Mississippi ("Miss. PERS") (collectively, "Movants") submit this Memorandum of Law in support of their joint motion, pursuant to Fed. R. Civ. P. 24, for an order permitting Miss. PERS to intervene as an additional named plaintiff in the above-captioned action.

## I.    <u>INTRODUCTION</u>

Miss. PERS purchased mortgage pass-through certificates (the "Certificates") issued by the Home Equity Mortgage Trust ("HEMT") Series 2006-4 and HEMT Series 2006-6 (collectively, the "Two Trusts").  *See* the accompanying Declaration of George W. Neville In Support of the Public Employees' Retirement System of Mississippi's Motion to Intervene ("Neville Decl."), Ex. A ("Miss. PERS Transaction Schedule").  The Certificates were sponsored and sold by DLJ Mortgage Capital, Inc. ("DLJ") and issued pursuant to the Registration Statement filed with the Securities and Exchange Commission ("SEC") by Credit Suisse First Boston Mortgage Securities Corporation ("CSMSCo") on August 10, 2006 (the "Registration Statement"), as well as the accompanying Prospectuses and Prospectus Supplements (the "Offering Documents"). The approximate aggregate value of the securities issued by the Two Trusts was $793,055,300.

On June 3, 2008, Lead Plaintiff  filed a Verified Complaint For Violations Of Sections 11, 12 And 15 Of The Securities Act of 1933 ("Initial Complaint") on behalf of all persons who purchased or acquired over $784 million of mortgage-pass through certificates issued by one (1) CSMSCo HEMT trust (HEMT Series 2006-5) issued pursuant and/or traceable to the same August 10, 2006 Registration Statement that issued the Two Trusts (the "Initial Complaint Class").

On March 23, 2009, Lead Plaintiff filed an Amended Securities Class Action Complaint ("Amended Complaint") on behalf of all persons or entities who purchased or acquired over $2.39 billion of mortgage pass-through certificates issued by four (4) CSMSCo HEMT trusts (HEMT Series 2006-4; HEMT Series 2006-5; HEMT Series 2006-6; and HEMT Series 2007-2) issued pursuant to the August 10, 2006 Registration Statement (the "Amended Complaint Class"). Included among the four trusts named in the Amended Complaint were the Two Trusts. Hence, all persons or entities that purchased or acquired securities issued by the Two Trusts, including Miss. PERS, were members of the putative class defined in the Amended Complaint.

On March 29, 2010, this Court issued an Opinion & Order sustaining certain of Lead Plaintiffs' claims pursuant to Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") against the Defendants. *See New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc.* et al., 2010 WL 1473288, No. 08-CV-5653 (S.D.N.Y. Mar. 29, 2010) ("Order"). However, while this Court sustained the claims brought on behalf of the purchasers of certificates issued by the one trust from which the Lead Plaintiff had purchased (the "2006-5 Trust Class"), it dismissed, for the Lead Plaintiff's lack of standing, the remaining claims on behalf of purchasers of securities issued by the remaining three (3) trusts (the "Three Trusts"), including the Two Trusts. *Id*. at *8.

In response to the Court's Order, Miss. PERS, with Lead Plaintiff, is promptly seeking to intervene as an additional named-plaintiff in the above-captioned action in order to prosecute its own claims and represent the other putative class members who purchased Certificates issued by the Two Trusts.

Defendants cannot be prejudiced by Miss. PERS's intervention as they have been on notice of these claims since June of 2008. Both the Initial Complaint and the Amended Complaint assert claims against the same defendants under the Securities Act based on the same misleading August 10, 2006 Registration Statement and a common set of facts. As such, Miss. PERS's interest was protected by the prosecution of this Action through March 29, 2010, when the Court's Order dismissed claims on behalf of purchasers of the Two Trusts.

At the time the Initial and Amended Complaints were filed lead plaintiffs in numerous other mortgage backed securities actions were pursuing a theory of standing identical to that pursued by Lead Plaintiff here and there had not yet been any decisions suggesting that a plaintiff could not act on behalf of a class of purchasers who acquired certificates pursuant to a common registration statement.[1] In light of the absence of any clear rulings on the standing issue, if Defendants were to prevail in their argument that Miss. PERS should have intervened prior to the Court's Order, it would dictate a grossly unfair outcome and impose an onerous burden on putative class members that is contrary to the Supreme Court's decision in *American Pipe & Construction v. Utah,* 414 U.S. 538, 553 (1974), and its progeny. Moreover, other courts recently faced with similar situations have allowed additional plaintiffs to be added to cure the standing deficiencies.[2] That is the proper result here as well.

---

[1] In fact, in one of the earliest decisions addressing this issue, in the *Countrywide* MBS case Judge Pfaelzer found that a plaintiff *did* have standing to represent purchasers from various offerings made pursuant to a common registration statement. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1164-65 (C.D. Cal. 2008).

[2] *See In re Wells Fargo Mortgage-Backed Certificates Litig.*, No. C09-01376(SI), 2010 WL 1661534 (N.D. Cal. Apr. 22, 2010) ("*Wells Fargo*"); *King County, Wash. v. IKB Deutsche Industrie-Bank AG, et al.,* No. C09 Civ 8387 (SAS), 2010 WL 2010943 (S.D.N.Y. May 18, 2010).

II.    **ARGUMENT**

"Federal Rule of Civil Procedure 24 provides for intervention either as of right or with the permission of the Court." *Deutsche Bank Trust Co. Ams. v. Elliott Int'l, L.P.*, 2009 U.S. Dist. LEXIS 121204, at *3 (S.D.N.Y. Dec. 14, 2009). The right to intervene is unconditional when there is either: (1) a federal statute conferring such unconditional right; or (2) the party has an interest in the property or transaction subject to the action and the disposition of the action might impair or impede the party from protecting that interest, unless the party is already adequately represented by other parties in the action. *See* Fed. R. Civ. P. 24(a). The right to intervene is permissive when there is either: (1) a federal statute conferring such conditional right; or (2) the party's claim and the action at issue have a common question of law or fact. *See* Fed. R. Civ. P. 24(b). Miss. PERS seeks to bring, on behalf of the purchasers of Certificates issued by the Two Trusts, those substantive claims from the Amended Complaint that relate to the Two Trusts.[3]

A.    **Intervention as a Matter of Right Under Rule 24(a) Should Be Granted**

In the Second Circuit, a movant can intervene as of right under Rule 24(a) when the party has an interest in the property or transaction subject to the action and the disposition of the action might impair or impede the party from protecting that interest, unless the party is already adequately represented by other parties in the action. *See* Fed. R. Civ. P. 24(a). Movants meet all of the criteria for intervention as of right.

1.    **Miss. PERS has a significantly protectable interest**

In order to establish a protectable interest sufficient to intervene as of right, a movant must establish that the interest asserted is "direct, substantial, and legally

---

[3] This reliance satisfies the requirements of Fed. R. Civ. P. 24(c), which requires the filing of a pleading identifying the claims to be brought in intervention.

protectable." *Brennan v. New York City Board of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (citing *Donaldson v. United States*, 400 U.S. 517, 531 (1971) (requiring a "significantly protectable interest")).

Miss. PERS purchased Certificates with a face value of $1,181,839 that were issued by the Two Trusts pursuant to the false or misleading Offering Documents and was damaged thereby. *See* Miss. PERS Transaction Schedule, Neville Decl., Ex. A. This monetary interest is legally protectable and is the same interest that had previously been represented by the Lead Plaintiff prior to the Court's Order. As such, pursuant to Fed. R. Civ. P. 24(a), Miss. PERS has a significantly protectable interest relating to the transactions that are the subject of this action.

In their May 25, 2010 letter (the "May 25 letter") Defendants assert that Miss. PERS does not have an interest in this Action, which they contend has been limited to transactions involving HEMT 2006-5, the single Trust from which Lead Plaintiff purchased Certificates. May 25 letter at 2. Defendants' argument presents a tautology – if their logic were accepted it would strip Rule 24 of any purpose or function by allowing intervention only when it was not necessary and preclude intervention in situations, such as this one, where plaintiffs seek to cure standing deficiencies on claims that were once part of the action but were dismissed for lack of standing.[4]

---

[4]  The cases defendants cite on this point are distinguishable. *See In re Bank of N.Y. Derivative Litig.*, 320 F. 3d 291, 300 (2d Cir. 2003) (dismissing derivative action filed in federal court where "the shareholders and nominal defendants will not be prejudiced" because their interests were "equally well-protected" by a parallel derivative action filed in state court); *Wash. Elec. Co-op., Inc. v Mass. Mun. Wholesale Elec.*, 922 F.2d 92, 97 (2d Cir. 1990) (affirming denial of intervention motion by the Vermont Attorney General where intervention "would radically alter" the action and "create a much different suit" by adding new claims that had damages six times greater than what was included in the existing lawsuit).

**2.     The Court's standing ruling necessitates the addition of Miss. PERS**

This Court held in the Order the Lead Plaintiff lacks standing to bring claims on behalf of investors who purchased certificates issued by the Three Trusts.  *See* Order at *4 ("Accordingly, Plaintiff lacks standing to bring claims arising from Offerings in which it did not participate.").  Thus, the Court's Order made it impossible for Lead Plaintiff to protect the interests of investors who purchased certificates from the Three Trusts.

Miss. PERS, by contrast, did purchase Certificates offered by two of the Three Trusts and can act as a plaintiff and a proposed class representative on behalf of itself and other investors who purchased certificates issued by the Two Trusts.  *See* Neville Decl. (discussing purchases of Certificates offered by the Two Trusts).  Thus, Miss. PERS is capable of serving as a named plaintiff on behalf of the purchasers of Certificates issued by the Two Trusts.

**3.     The motion to intervene is timely filed**

The concept of "[t]imeliness defies precise definition, although it certainly is not confined strictly to chronology.  Among the circumstances generally considered are  "(1) how long the [movant] had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the [movant] if the motion is denied; and (4) any unusual circumstances mitigating for or against a finding of timeliness."  *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994).

a)     Miss. PERS was on notice of its need to intervene since the Court's Order

Here, the instant motion is being submitted soon after the Court's Order.[5]  Prior to that time, Miss. PERS's interests and those of the purchasers of Certificates issued by the

_____

[5]  Miss. PERS submitted its Pre-Motion Conference Letter to the Court on May 20, 2010 ("May 20 letter").

Two Trusts were adequately represented by the Lead Plaintiff.[6]  After reviewing the Order and considering its effect, Miss. PERS made the decision that intervention in this Action was necessary to protect its interests and those of the purchasers of Certificates issued by the Two Trusts, discussed its intervention with Lead Counsel, received the necessary approval from the Mississippi Attorney General to move forward, and submitted its May 20 letter to the Court.

There will be no prejudice to the existing parties if Miss. PERS is allowed to represent the interests of the purchasers of Certificates issued by the Two Trusts.  Since the Lead Plaintiff, which joins this motion, sought to but was unable to represent these purchasers allowing Miss. PERS to do so now would further the Lead Plaintiff's stated interests, not harm them.  As to the Defendants, they have had notice of the claims Miss. PERS seeks to prosecute since the filing of the Initial Complaint.

> b)  The other parties will not be prejudiced by Miss. PERS's intervention

Defendants argue in their May 25, 2010 letter that they will be prejudiced if Miss. PERS intervenes in this Action because it will "require the parties to hit the 'reset' button at this stage of the proceedings."  May 25 letter at 3 n.2.  Defendants are incorrect, because, as of May 20, 2010, when Miss. PERS filed its pre-motion letter, Defendants had not yet answered the Second Amended Complaint and discovery had not yet commenced (Defendants filed their Answer on June 9, 2010, which caused discovery to commence).  Moreover, Miss. PERS intends to abide by the dates established in the Court's May 5, 2010 Pre-Trial Scheduling Order [Docket No. 95].

---

[6]  This is further discussed in Section C, *infra*.

c)      Denial of the Motion would cause considerable
delay and prejudice

Allowing intervention now will benefit all parties and preserve judicial resources. In addition to considering the impairment that would be suffered generally if this Motion is denied (discussed below in Section II.A.4), the Court should consider the possible delay caused by any subsequent effort to preserve claims related to the Two Trusts. By granting Miss. PERS's motion to intervene now, the parties and the Court will have a single class action move forward on an existing pre-trial schedule for class certification. If Miss. PERS's motion is denied, and such decision is either appealed or a new action is brought including those claims, the parties will likely be subjected to duplicative discovery on both those claims and the existing claims in this Action. That duplicative discovery would cause a significant waste of both the parties' and judicial resources.[7]

### 4.      Without intervention Movants' interest will be impaired

Absent intervention, Miss. PERS's and the purchasers of Certificates issued by the Two Trusts' interests will not be represented in the above-captioned action. *See* Order at *4 (Lead Plaintiff lacks standing to assert claims on behalf of the purchasers of Certificates issued by the Three Trusts). Thus, if this Motion is not granted it would adversely affect and potentially prejudice both Miss. PERS, which provides benefits to approximately 373,000 employees and retirees (*see* Neville Decl. ¶ 2), and those other purchasers of Certificates issued by the Two Trusts whose interests would not otherwise be protected in this litigation.

---

[7]  In evaluating the Motion the Court should also consider the novelty of the standing issues as an "unusual circumstance[] mitigating for … a finding of timeliness." *Pitney Bowes, Inc.*, 25 F.3d at 70. As described fully in Section II.C.2. below, the standing issues that exist in this case and in several of the similar cases that the Court relied upon in its Order are relatively novel. As a result of the emerging nature of these issues this joint motion should be considered timely as it was made promptly in response to the Court's ruling on the disputed standing issue.

### B.    In the Alternative, Permissive Intervention Under Rule 24(b) Should Be Granted

Rule 24(b) "permits intervention in the discretion of the court where the movant 'has a claim or defense that shares with the main action a common question of law or fact.'"  *Galindo v. UBS Int'l Inc.*, 2010 U.S. Dist LEXIS 16737, at *6 (S.D.N.Y. Feb. 24, 2010) (quoting Fed. R. Civ. P. 24(b)(1)(B)).  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

Miss. PERS's claims, and those of the purchasers of Certificates issued by the Two Trusts, are essentially identical to those of the Lead Plaintiff—they *are* the claims the Lead Plaintiff sought to pursue.  As these claims were originally set forth in the same Amended Complaint under the same factual and legal theories and against the same defendants as the claims remaining in the above-captioned action, there are common questions of law and fact.  Such common questions of law and fact include:  (i) whether the Defendants violated the Securities Act; (2) whether the Offering Documents issued by Defendants to the investing public negligently omitted and/or misrepresented material facts about the underlying mortgage loans comprising the pools; and (3) to what extent the members of the Amended Complaint Class and the purchasers of Certificates issued by the Two Trusts have sustained damages and, if so, what is the proper measure thereof.

As noted above, Miss. PERS seeks to re-assert claims that Defendants have been aware of since the filing of the Initial Complaint.  There will be no undue delay in the action if Miss. PERS is permitted to intervene.  The efficient prosecution of the case will not be in any way adversely affected since the appointment of Lead Plaintiff and Lead Counsel will remain undisturbed.  Miss. PERS seeks to fulfill the standing requirement

that the Lead Plaintiff was unable to satisfy. Indeed, the effect of any minor delay that may result in granting this Motion will be substantially outweighed by the benefit of having all affected purchasers of Certificates issued by the Two Trusts represented in this action once again.

### C.  Miss. PERS's Motion was Appropriately Made in Response to the Court's Order

In their May 25, 2010 letter and at the June 14, 2010 Pre-Motion Conference, Defendants raised multiple arguments directed at establishing that Miss. PERS somehow waived its rights to intervene by relying on the claims being prosecuted by Lead Plaintiff. Defendants' contentions are incorrect. This Motion is timely and is appropriately made after the Court determined that Lead Plaintiff could no longer prosecute claims related to the Two Trusts.

### 1.  *American Pipe* Tolling Applies

Claims brought pursuant to Sections 11 and 12 of the Securities Act are subject to a one-year statute of limitations running from the date of discovery of the untrue statements or omissions and a three-year statute of repose running from the date the securities were offered to the public. *See* 15 U.S.C. § 77m. These limitations periods were tolled by the filing of the Initial and Amended Complaints[8] pursuant to *American Pipe & Construction v. Utah,* 414 U.S. 538, 553 (1974), and its progeny. Defendants

---

[8] At the June 14, 2010 Pre-Motion Conference, Defendants argued that Miss. PERS's motion was "futile" because claims on behalf of the Two Trusts were not included in this Action until the Amended Complaint was filed on March 23, 2009. While it is unclear if this is an argument about the statute of limitations or Rule 24 timeliness, it is clear that Defendants are incorrect. Miss. PERS's claims based on the Two Trusts "relate back" to the filing of the Initial Complaint on June 3, 2008. *See* Fed. R. Civ. P. 15(c)(2) (an amended pleading relates back when "[t]he claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrences set forth or attempted to be set forth in the original pleading."); *N.J. Carpenters Vacation Fund v. The Royal Bank of Scotland Group, PLC,* 2010 WL 1172694, at *9 (S.D.N.Y. Mar. 26, 2010) (Baer, J.) ("RBS") (quoting *Stevelman v. Alias Research Inc.,* 174 F.3d 79, 86-87 (2d Cir. 1999)) ("An amended pleading will relate back if 'adequate notice of the matters raised in the amended pleadings has been given to the opposing party within the statute of limitations by the general facts situation alleged in the original pleading.'").

argue in their May 25 letter that *American Pipe* tolling does not apply.  *See* May 25 letter at 3-4.  Defendants are wrong.

In *American Pipe*, the Supreme Court "established that commencement of a class action tolls the applicable statute of limitations as to all members of the class."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 n.13 (1974) (citing *Am. Pipe and Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974)).  "[T]he Supreme Court has repeatedly stated [the American Pipe tolling rule]  . . . [and] [w]e see no reason not to take this statement at face value."  *In re WorldCom Sec. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007) ("Because members of the asserted class are treated for limitations purposes as having instituted their own actions, at least so long as they continue to be members of the class, the limitations period does not run against them during that time.").

"Several courts have held that *American Pipe* is appropriately applied to motions to intervene or amended complaints filed to substitute a proper class representative with standing prior to a [final] decision on class certification."  *CalPERS v. Chubb Corp.*, 2002 WL 33934282, at *29 (D.N.J. June 26, 2002) *aff'd*, 394 F.3d 126 (3d Cir. 2004) (citing cases).  In *CalPERS*, the original class representative, CalPERS, filed a securities class action complaint on behalf of holders of stock issued by two defendant companies, Chubb and Executive Risk.  *Id*. at *1.  The original complaint, which was filed 15 days prior to the expiration of the limitations period, listed CalPERS as sole named plaintiff even though it did not own any Executive Risk shares.  *Id*. at *26-27.  After the limitations period ended, John Teeple, an Executive Risk stock holder, moved to become a named plaintiff in the action.  *Id*. at *27.  As here, the defendants argued that "the assertion of [the claims against Executive Risk] by CalPERS, which did not have

standing to raise those claims, did not toll the statute of limitations for putative class members such as Teeple, who would have standing to bring such a claim." *Id.* The court rejected defendants' argument, and held that *American Pipe* tolling applied:

> This Court can conceive of little difference between the situation here and that in *American Pipe*. Here, Teeple was a putative class member as defined in the Complaint and thus, his inclusion protects the interests of all other putative class members as *American Pipe* intended. To rule otherwise would create a situation similar to that which the Supreme Court sought to eliminate in *American Pipe*, that is putative class members would be forced to file motions to intervene prior to the expiration of the statute of limitations and in advance of the decision on class certification to protect their interests.

*Id.* at *30 (citing *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 203 (S.D.N.Y. 1992)); *see also In re Elscint, Ltd. Sec. Litig.*, 674 F. Supp. 374, 377 (D. Mass. 1987) ("[T]he fact that a class action is disallowed because the class representative lacks 'standing' does not, *per se*, prevent application of the *American Pipe* tolling rule.") (quoting *Rose v. Ark. Valley Envtl. & Util. Auth.*, 562 F. Supp. 1180, 1193 (W.D. Mo. 1983)).

Under similar circumstances, the court in *In re Flag Telecom Holdings, Ltd. Securities Litigation* also rejected defendants' argument that *American Pipe* tolling does not apply where the original plaintiff lacked standing. 352 F. Supp. 2d 429, 454-46 (S.D.N.Y. 2005), *abrogated on other grounds*, 574 F.3d 29 (2d Cir. 2009). In *Flag*, the original plaintiff's claim for violation of Section 12(a)(2) of the Securities Act of 1933 was dismissed because that plaintiff had purchased Flag securities in the secondary market and thus did not have §12(a)(2) standing. *Id.* at 454. After being granted leave to replead, the original plaintiff filed a new complaint naming a new plaintiff, Norman Hunter, who had purchased securities directly in Flag's initial public offering. *Id.* at 455. The defendants argued that, although naming Hunter "may have . . . cured the defect"

with the original plaintiff's standing, Hunter's claims were time barred by the three year statute of repose and tolling under *American Pipe* should not apply. *Id*. at 454-55. The court rejected this argument, holding that "the failure to apply the *American Pipe* rule to cases where a class action complaint was dismissed for lack of standing undermines the policies underlying Rule 23 and is inconsistent with the Court's reasoning in *American Pipe*." *Id*. at 455 n.19.

In *Haas v. Pittsburgh National Bank*, 526 F.2d 1083 (3d Cir. 1975), the original plaintiff, Mary Haas, brought a class action challenging the methods by which three banks, Pittsburgh National Bank, Mellon Bank, and Equibank, computed interest on their customers' credit card accounts. Although Haas represented in her initial and amended complaints that she held credit cards issued by two of the banks, she never alleged that she had an Equibank credit card. *Id*. at 1095. Nevertheless, the district court certified a class consisting of all holders of credit cards issued by the three banks and named Haas as class representative. *Id*. After later determining that Haas lacked standing to maintain a claim against Equibank, the district court reconsidered its class certification order and decertified the Equibank portion of the class. *Id*. Rather than entering summary judgment for Equibank, the district court allowed the complaint to be amended to add a new plaintiff, Mitchell, who had standing to assert claims against Equibank but ruled that such amendment was untimely. *Id*. at 1095-96.

In reviewing the district court's decision, the U.S. Court of Appeals agreed with plaintiffs "that when Haas filed the original class action complaint . . . the limitations period was tolled for all members of the class Haas purported to represent," including Mitchell:

> [W]e believe the broad tolling principle [*American Pipe*] enunciated should also apply to the instant case where the district court determined after its original certification of the class action that Haas could not represent cardholders at Equibank since she did not hold a card issued by it. Haas' timely action against all three banks provided Equibank with notice within the statutory period of the substantial nature of the claims against which they would be required to defend and also "the number and generic identities of the plaintiffs." These plaintiffs were in existence at the time the action was originally brought and were described as claimants in the complaint. The only change effectuated by the district court's order was the prompt addition of a nominal plaintiff who held an Equibank card.

*Id*. at 1096-97 (quoting *Am. Pipe*, 414 U.S. at 555) (footnote omitted).

Defendants cite *Korwek v. Hunt*, 827 F.2d 874 (2d Cir. 1987), and a line of cases that limit *American Pipe* tolling where plaintiffs seek to serially file identical complaints. *See* May 25, 2010 letter at 3-4. However, other courts have distinguished *Korwek* and found it inapplicable because:

> *Korwek* . . . stands only for the proposition that once class certification is denied, putative class members may not rely on the *American Pipe* rule to commence a new, substantially identical class action because this would allow the putative class members to "argue and reargue the question of class certification by filing new but repetitive complaints."

*Flag*, 352 F. Supp. 2d at 455 n.20 (quoting *Korwek*, 827 F.2d at 879); *see also Auscape Int'l v. Nat'l Geog. Soc.*, 409 F. Supp. 2d 235 (S.D.N.Y. 2004). *Korwek* is inapplicable where, as here, prior to a class certification decision, a class member seeks to intervene to assert the same claims that the original class representative brought prior to the expiration of the limitations period. "[T]he instant matter is distinguishable from those cases," such as *Korwek*, "refusing to apply *American Pipe* to successive class actions" because they are concerned that plaintiffs will "re-litigate the propriety of class certification." *CalPERS*, 2002 WL 33934282, at *28-29 ("There is no such risk where *American Pipe* is

14

applied prior to a decision on class certification and thus, those decisions are inapplicable to the case at bar.").[9]

This situation necessitates tolling of Miss. PERS's claims.  The motion to intervene was promptly filed after this Court's opinion dismissing the claims on behalf of purchasers from the Three Trusts that had previously been part of the Amended Complaint Class.  The instant motion does not involve "new claims."  *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354-55 (1983) (J. Powell, *concurring*) ("[T]he defendant normally is not prejudiced by tolling of the statute of limitations.  It is important to make certain, however, that *American Pipe* is not abused by the *assertion of claims that differ from those raised in the original class suit*.") (emphasis added).  Given that the great weight of applicable authority supports intervention and tolling under these circumstances, and the absence of any prejudice to the Defendants, this Motion for intervention should be granted.

### 2.   The issue of standing was not resolved until the Court's Order

Defendants argue that Miss. PERS' intervention would be untimely in light of "the obviousness of the standing issue raised by Defendants in their Motion [*sic*] Dismiss (particularly in light of PERS's presumed familiarity with this and other mortgaged-

---

[9]  *See also McKowan*, 295 F.3d at 386-88 (drawing a distinction between the "*Korwek* line of cases," which prohibit *American Pipe* tolling to "successive attempts to certify a previously rejected class," with those cases that allow *American Pipe* tolling after finding "the original certified class representative . . . wanting," but not rejecting the propriety of the class action itself); *Enron*, 529 F. Supp. 2d at 711 (declining to follow *Korwek* and its progeny in a substantially similar situation, because "[t]his is not a case where class certification was previously denied and where the propriety of a class action is being relitigated, which the Second Circuit in *Korwek* and . . . others, have barred.") (citations omitted); *In re IPO Sec. Litig.*, 2004 WL 3015304, at *5 n.47 (S.D.N.Y. Dec. 27, 2004) ("*Korwek* . . . involved a denial of 'class certification mainly because of overwhelming manageability difficulties,' not lack of standing.  Thus, *Korwek* addressed the unsuitability of tolling class *claims*, not the inadequacy of proposed *lead plaintiffs*, and prohibits the repetitious filing of purported class actions for which class certification has already been denied." (emphasis in original)).

backed securities litigation)."  May 25 letter at 3 n.2.  However, the apparent standing of

the Lead Plaintiff to represent all purchasers on offerings made pursuant to the same

registration statement was founded on the language of Section 11, which authorizes the

filing of an action on behalf of all purchasers "[i]n case any part of the *registration*

*statement* contained an untrue statement of material fact."  15 U.S.C. § 77k(a). (emphasis

added).  Recent authority supported this interpretation of the statute. *See In re*

*Countrywide Fin. Corp. Sec. Litig*., 588 F. Supp. 2d 1132, 1164-65 (C.D. Cal. 2008)

(holding that purchasers of securities in offerings made through a prospectus supplement,

pursuant to an initial shelf registration statement, could serve as representatives for

purchasers from other offerings, "[s]o long as (1) the securities are traceable to the same

initial shelf registration and (2) the registration statements share common 'parts' that (3)

were false and misleading at each effective date.").

Indeed, in virtually every other mortgage backed securities class action

commenced in the period between 2008 and 2009,[10]  the lead plaintiffs presumed that a

purchaser who acquired securities pursuant to the common registration statement had

standing to represent all purchasers on all the offerings emanating from that registration

statement.  It was only in 2010 that decisions began to emerge ruling that a purchaser for

each offering is required under Article III.  *See* fn. 10, above.

---

[10]  There are several recently decided mortgage pass-through certificate cases where lead plaintiffs sought
to represent a class of investors in multiple offerings emanating from a common registration statement,
even if the named plaintiffs did not purchase in each offering, and where, after briefing, the courts
determined that plaintiffs lacked standing to represent all purchasers in the putative class. *See, e.g., In re*
*Lehman Brothers Secs. and ERISA Litig.,* 684 F.Supp.2d 485, 491 (S.D.N.Y. Feb. 17, 2010) ("Named
plaintiffs have purchased in six of the ninety-four offerings. They have not alleged any personal injury
stemming from the other eighty-eight.  They therefore have no standing to assert those claims."); *RBS*,
2010 WL 1172694, at *8 (same); *N.J. Carpenters v. Residential Capital*, No. 08 CV 8781(HB), 2010 WL
1257528 at *4 (S.D.N.Y. Mar. 31, 2010) (same)*; Wells Fargo,* 2010 WL 1661534, at *5 (same, but
granting leave to replead to cure the standing defects)*.*  In each of these cases the issue of standing was in
dispute and plaintiffs' arguments were supported by multiple authorities.

Apparently, according to Defendants, class members have the obligation to immediately investigate and second guess the consensus of experienced counsel across the country with respect to the sufficiency of plaintiffs' standing and seek intervention or file a separate complaint prior to the expiration of the limitations period to protect their stakes in the litigation.  That is exactly the *opposite* of what *American Pipe* and subsequent cases discussing it have required or desired.[11]

"Standing questions are one[s] with which both skilled counsel and skilled courts sometimes experience considerable difficulty, even after extensive discovery and when intimately acquainted with the facts . . . .  I can see no more reason, as a general matter, to require a passive class member to anticipate the existence of and ultimate ruling upon that question than to require him to do so with respect to questions of 'numerosity,' 'commonality' or 'typicality.'"  *Rose*, 562 F. Supp. at 1193.

It is precisely because standing issues are often unclear in the class action context that if a court does dismiss all or part of a class action based on lack of standing, it will permit joinder of new plaintiffs who can cure the standing defects.

In a situation effectively identical to this one, Judge Illston ruled on a motion to dismiss in *Wells Fargo,* and found that while there was a purchaser pursuant to each

---

[11]  *See, e.g., Am. Pipe*, 414 U.S. at 553 ("A contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure.  Potential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable."); *Flag*, 352 F. Supp. 2d at 456 ("Rule 23 and the PSLRA tend to encourage investors who might otherwise bring lawsuits to refrain from filing a complaint or intervening in an action when those investors feel their interests are adequately protected in a proposed class action that has already been filed. . . . .  [A class member] should not be punished simply because he failed to anticipate that [the original] plaintiff's § 12(a)(2) claims would be dismissed because none of the named plaintiffs in the action had standing to sue on those claims."); *cf. WorldCom*, 496 F.3d at 253 (quoting *Am. Pipe*, 414 U.S. at 552) ("Just as class members need not actively participate in order to profit from the class action's eventual outcome, they may also benefit passively from the suit's tolling effect on the statute of limitations.  Even class members who were unaware of the class action – indeed, even those who 'demonstrably did not rely' on it – should benefit from the tolling.").

registration statement, a representative mortgage backed certificate purchaser was required for each offering in order to satisfy standing requirements.  *Wells Fargo,* 2010 WL 1661534, at *5.  As part of the that decision, the court permitted lead plaintiffs to file an amended complaint to add additional plaintiffs who had purchased certificates in those offerings identified in the complaint, but for which there had not previously been a representative purchaser.  *Id.*  Recently, in a class action involving state and common law claims related to the purchase of commercial paper backed by a structured investment vehicle, Judge Scheindlin found that the U.S. commercial note purchasers did not have standing to represent European commercial note purchasers but granted the plaintiffs leave to file an amended complaint adding a European Note purchaser to cure the standing defect.  *King County, Wash. v. IKB Deutsche Industrie-Bank AG, et al.,* No. C09 Civ 8387 (SAS), 2010 WL 2010943, *7 (S.D.N.Y. May 18, 2010).

If these courts were to adopt  Defendants' reasoning, no additional plaintiffs who purchased  mortgage backed certificates would have been permitted to join those actions, since such new plaintiffs should have anticipated Judge Illston's or Judge Scheindlin's standing decisions rendered in 2010 and intervened years earlier.  Such a result is contrary to the instruction of *American Pipe* and should not be adopted here to exclude the intervention of Miss. PERS.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Lead Plaintiff and Miss. PERS respectfully request that the motion to intervene be granted in all respects.

Dated: June 18, 2010
      New York, New York

By:    /s/ James A. Harrod
       JAMES A. HARROD

**WOLF POPPER LLP**
Marian P. Rosner (#MR-0410)
James A. Harrod (#JH-4400)
Robert S. Plosky (#RP-7829)
Matthew Insley-Pruitt (#MI-0525)
845 Third Avenue, 12th Floor
New York, NY 10022
Tel:    (212) 759-4600
Fax:   (212) 486-2093
*mrosner@wolfpopper.com*
*jharrod@wolfpopper.com*
*rplosky@wolfpopper.com*
*minsley-pruitt@wolfpopper.com*

-and-

**POND, GADOW & TYLER, P.A.**
John Gadow
Blake Tyler
502 South President Street
Jackson, MS 39201

*Counsel for Movant Public Employees'
Retirement System of Mississippi*

By:    /s/ Joel P. Laitman
       JOEL P. LAITMAN

**COHEN MILSTEIN SELLERS &
  TOLL PLLC**
Joel P. Laitman (JL-8177)
Christopher Lometti (CL-9124)
Michael Eisenkraft (ME-6974)
Daniel B. Rehns (DR-5506)
Kenneth M. Rehns (KR-9822)
88 Pine Street, Eighteenth Floor
New York, NY 10005
Tel:    (212) 838-7797

*Lead Counsel for the Class*