# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| New Jersey Carpenters Health Fund, On Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> *v.* <br><br> DLJ Mortgage Capital, Inc., Credit Suisse Management, LLC f/k/a Credit Suisse First Boston Mortgage Securities Corporation, Andrew A. Kimura, Thomas Zingalli, Jeffrey A. Altabef, Michael A. Marriott, Evelyn Echevarria, and Credit Suisse Securities (USA) LLC, <br><br> Defendants. | Civ. No. 08-cv-5653-PAC |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement, dated December 21, 2015 ("Stipulation" or "Settlement"), is made and entered into by and among (i) Lead Plaintiff, on behalf of itself and each of the proposed Settlement Class Members, by and through their counsel of record in the Action; and (ii) Defendants, by and through their counsel of record in the Action.

This Settlement is intended by the Settling Parties to fully, finally and forever compromise, resolve, discharge and settle the Released Claims and result in the complete dismissal of this Action with prejudice, upon and subject to the terms and conditions herein.

**WHEREAS:**

A.      All terms with initial capitalization shall have the meanings ascribed to them in paragraph 1 below or as otherwise defined herein.

B.      On June 3, 2008, the New Jersey Carpenters Health Fund filed a complaint against, *inter alia*, Defendants, in the Supreme Court of the State of New York, County of New York, Index No. 601670/08, asserting claims under Sections 11, 12, and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77a *et seq.* (the "Securities Act").

C.      On June 23, 2008, the action was removed to the United States District Court for the Southern District of New York, Civ. No. 08-cv-5653. The case was assigned to the Honorable Paul A. Crotty (the "District Court," or the "Court").

D.      On October 6, 2008, notice of the action was published pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), notifying eligible purchasers of their right to move for appointment as lead plaintiff.

E.      On January 22, 2009, the District Court appointed the New Jersey Carpenters Health Fund as Lead Plaintiff. On June 24, 2009, the District Court approved Lead Plaintiff's request to appoint Cohen Milstein Sellers & Toll PLLC as Lead Counsel.

F.      On March 23, 2009, Lead Plaintiff filed the Amended Securities Class Action Complaint (the "First Amended Complaint"). The First Amended Complaint asserted claims

2

concerning the purchase or sale of securities, issued in four residential mortgage-backed securities offerings (the "Offerings," each of which is sometimes referred to herein as an "Offering"),[1] pursuant or traceable to a single Registration Statement and accompanying Prospectus filed with the Securities and Exchange Commission by Credit Suisse First Boston Mortgage Securities Corporation ("CSMSCo") on August 10, 2006 (No. 333-135481), against CSMSCo, DLJ Mortgage Capital, Inc. ("DLJ"), and Credit Suisse Securities (USA), LLC ("CSS"), as well as Andrew A. Kimura, Thomas Zingalli, Jeffrey A. Altabef, Michael A. Marriott and Evelyn Echevarria.[2]

G.     On June 24, 2009, Defendants moved to dismiss the First Amended Complaint.

H.     On March 29, 2010, the Court issued an order (the "March 29, 2010 Order") granting in part and denying in part Defendants' motions to dismiss. In the March 29, 2010 Order, the Court found that Lead Plaintiff adequately alleged violations of the Securities Act against Defendants for the HEMT 2006-5 Offering in which the Lead Plaintiff purchased securities, by alleging Defendants' failure to disclose that the mortgage originators systematically disregarded the applicable underwriting guidelines. The Court dismissed all other Offerings from the case on standing grounds. The Court also dismissed claims regarding appraisals and appraisal practices, loan-to-value ratios, and ratings and rating methodology.[3] The Court also dismissed with leave to amend Lead Plaintiff's Section 12 claims.

I.     On April 14, 2010, Lead Plaintiff filed the Second Amended Securities Class Action Complaint (the "Second Amended Complaint").

---

[1] The Home Equity Mortgage Trust ("HEMT") 2006-4, 2006-5, 2006-6, and 2007-2 Offerings.

[2] The First Amended Complaint also asserted claims against Moody's Investors Service, Inc., a division of Moody's Corp., and Standard & Poor's, a division of The McGraw-Hill Companies, Inc. ("Rating Agencies"), but the claims against them were dismissed by the Court and the dismissal of the Action with prejudice, as contemplated by this Settlement, will bring these claims to an end.

[3] The Court also dismissed the claims against the Rating Agencies.

3

J.      On June 9, 2010, Defendants answered the Second Amended Complaint.

K.      On June 18, 2010, a joint motion to intervene was filed by Lead Plaintiff and the Public Employees Retirement System of Mississippi ("Miss. PERS") seeking permission for Miss. PERS to intervene in the case to represent purchasers in HEMT 2006-5 and HEMT 2006-6. On December 15, 2010, the Court denied the motion to intervene.

L.      On September 30, 2010, Lead Plaintiff moved to certify a class of Persons who acquired Certificates in HEMT 2006-5, to appoint Lead Plaintiff as Class Representative, and to appoint Cohen Milstein Sellers & Toll PLLC as Lead Counsel (the "First Class Certification Motion").

M.      On August 16, 2011, the Court granted the First Class Certification Motion.

N.      On September 11, 2012, Lead Plaintiff filed a motion for reconsideration of the March 29, 2010 Order dismissing the claims as to those Offerings in which Lead Plaintiff did not purchase securities in light of *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) ("*NECA-IBEW*"). Lead Plaintiff's reconsideration motion sought to reinstate claims with respect to the three Offerings that had previously been dismissed, HEMT 2006-4, HEMT 2006-6, and HEMT 2007-2.

O.      On January 23, 2013, the Court granted in part and denied in part Lead Plaintiff's motion for reconsideration. Specifically, the Court held that under *NECA-IBEW*, Lead Plaintiff had standing to assert claims relating to HEMT 2007-2, but not HEMT 2006-4 or HEMT 2006-6.

P.      On May 20, 2013, Lead Plaintiff filed the Third Amended Securities Class Action Complaint (the "Third Amended Complaint") under seal. The Third Amended Complaint added allegations relating to the HEMT 2007-2 Offering.

Q.      On July 2, 2013, Defendants filed their Answer and Affirmative Defenses to the Third Amended Complaint under seal.

R.      On July 1, 2013, Lead Plaintiff filed a motion to modify the certified class to encompass Persons who acquired the HEMT 2007-2 Certificates (the "Second Class Certification Motion").

S.      On March 17, 2014, the Court granted the Second Class Certification Motion.

T.      On April 28, 2015, Lead Plaintiff filed motions for summary judgment on various of Defendants' affirmative defenses, including due diligence. Lead Plaintiff also filed a motion to exclude certain expert testimony of Defendants' loss causation expert. That same day, Defendants filed motions for summary judgment on various issues, including falsity, materiality, and loss causation. Defendants also filed motions to exclude certain expert testimony of three of Lead Plaintiff's experts.

U.      By Order dated April 28, 2015, the Court dismissed DLJ as a defendant in the Action.

V.      Oppositions to the motions for summary judgment and motions to exclude filed on April 28, 2015 were filed by Lead Plaintiff and Defendants on June 29, 2015. Reply papers were filed on July 29, 2015.

W.      On October 2, 2015, Defendants filed a motion to strike certain declarations submitted by Lead Plaintiff's expert in connection with Lead Plaintiff's motions to exclude and Lead Plaintiff's opposition to Defendants' motion for summary judgment on loss causation. On October 14, 2015, Lead Plaintiff filed an opposition to Defendants' motion to strike.

X.      On December 4, 2014, Lead Plaintiff and Defendants participated in an all-day mediation session under the auspices of Judge Layn Phillips, a former Federal District Court Judge. The parties were not able to reach agreement that day, but over the course of the next year, Judge Phillips facilitated additional mediation efforts via telephone and email. Thereafter, on November 3, 2015, Lead Plaintiff and Defendants reached a settlement in principle and

executed a term sheet setting forth certain terms of the settlement subject to the completion of definitive documentation and Court approval.

Y.      Lead Counsel states that it has concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the Action, the legal and factual defenses thereto, and the applicable law, that (i) it is in the best interests of the Settlement Class to enter into this Settlement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Settlement Class, and (ii) the Settlement set forth herein is fair, reasonable and adequate and in the best interests of Settlement Class Members.

Z.      Defendants state that, despite believing that they are not liable for the claims asserted against them in the Action and that they have good and meritorious defenses thereto, they have nevertheless agreed to enter into this Settlement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and thereby to put to rest this controversy and avoid the risks inherent in litigation.

NOW THEREFORE, IT IS HEREBY AGREED, by and among the Settling Parties, through their respective counsel of record, that, subject to the approval of the District Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the PSLRA and the other conditions set forth herein, in consideration of the benefits flowing to the Settling Parties hereto, that the Action and all Released Claims as against the Released Parties shall be fully, finally and forever compromised, settled, released, discharged and dismissed with prejudice, upon and subject to the following terms and conditions:

<u>**DEFINITIONS**</u>

1.      As used in this Stipulation, the following terms shall have the meanings specified below.

6

(a)      "Action" means the securities class action styled *New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc. et al.* No. 08-cv-5653-PAC (S.D.N.Y.).

(b)      "Authorized Claimant" means a Settlement Class Member that timely submits a valid Proof of Claim Form to the Claims Administrator in accordance with the requirements established by the Court, and that is approved by the Claims Administrator for payment from the Net Settlement Fund.

(c)      "Certificate" means a certificate in one of the Offerings.

(d)      "Claim" means a claim submitted by a Settlement Class Member to the Claims Administrator for payment pursuant to the Plan of Allocation.

(e)      "Claims Administrator" means Epiq Systems, Inc.

(f)      "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to eligible Settlement Class Members.

(g)      "Class Period" means the period on or before June 3, 2008 for the HEMT 2006-5 Certificates and on or before March 23, 2009 for the HEMT 2006-4, HEMT 2006-6, and HEMT 2007-2 Certificates.

(h)      "Class Representative" means New Jersey Carpenters Health Fund.

(i)      "Credit Suisse" means Credit Suisse First Boston Mortgage Securities Corporation and Credit Suisse Securities (USA) LLC.

(j)      "Defendants" means Credit Suisse First Boston Mortgage Securities Corporation, Credit Suisse Securities (USA) LLC, Andrew A. Kimura, Thomas Zingalli, Jeffrey A. Altabef, Michael A. Marriott, and Evelyn Echevarria.

(k)      "Defendants' Counsel" means Morgan, Lewis & Bockius LLP.

(l)      "Effective Date" means the earliest date on which all of the events and conditions to Settlement specified in ¶ 36 of this Stipulation have been satisfied.

7

(m)     "Escrow Account" means an escrow account mutually agreeable to the Settling Parties, established, maintained, and controlled by the Escrow Agent, subject to the Court's supervisory authority, into which Defendants shall deposit or cause to be deposited the Settlement Amount.

(n)     "Escrow Agent" means Eagle Bank and/or Huntington Bank.

(o)     "Final" means, with respect to an order of the Court, including, without limitation, the Judgment, when the last of the following occurs: (i) the expiration of the time to file a motion to alter or amend the order or Judgment without such motion having been filed; (ii) the expiration of the time in which to appeal the order or Judgment has passed without any appeal having been taken; and (iii) if a motion to alter or amend is filed or if an appeal is taken, the determination of that motion or appeal has occurred in such a manner as to permit the consummation of the Settlement Agreement.  For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this Settlement but shall exclude any appeal pertaining solely to a Class Distribution Order, a Plan of Allocation, or to the Court's award of Lead Counsel fees and Litigation Expenses.

(p)     "Final Approval Hearing" or "Settlement Hearing" means the hearing set by the Court under Rule 23(e) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

(q)     "Individual Defendants" mean Andrew A. Kimura, Thomas Zingalli, Jeffrey A. Altabef, Michael A. Marriott and Evelyn Echevarria.

(r)     "Investment Vehicle" means any investment company or pooled investment fund (including, but not limited to, mutual fund families, exchange-traded funds, fund of funds and hedge funds) in which any Defendant has or may have a direct or indirect interest, or as to which

8

its affiliates may act as investment advisors, but of which any Defendant or any of its respective affiliates is not a majority owner or does not hold a majority beneficial interest.

(s)      "Judgment" means the order and final judgment to be entered by the Court in the form attached hereto as Exhibit B.

(t)      "Lead Counsel" means the law firm of Cohen Milstein Sellers & Toll PLLC.

(u)      "Lead Plaintiff" means New Jersey Carpenters Health Fund.

(v)      "Litigation Expenses" means the reasonable costs and expenses incurred by Lead Counsel in connection with commencing and prosecuting the Action, for which Lead Counsel intends to apply to the Court for reimbursement from the Settlement Fund. Litigation Expenses may also include reimbursement of the expenses of Lead Plaintiff in accordance with 15 U.S.C. § 77z-1(a)(4).

(w)      "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes and Tax Expenses; (ii) any Notice and Administration Costs; and (iii) any attorneys' fees and Litigation Expenses awarded by the District Court.

(x)      "Notice" means the Notice of Pendency of Class Action, Preliminary Approval Order and Proposed Settlement, Settlement Fairness Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (substantially in the form attached hereto as Exhibit A-1), which is to be sent to members of the Settlement Class.

(y)      "Notice and Administration Costs" means the costs, fees and expenses that are reasonably incurred by the Claims Administrator in connection with (i) providing notice to the Settlement Class; and (ii) administering the Claims process, including, without limitation, the actual costs of publication, printing and mailing the Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners, the administrative expenses actually incurred and fees reasonably charged by the Claims Administrator in connection with identifying Settlement Class Members and providing Notice and processing the submitted claims, and the

9

reasonable fees, if any, of the Escrow Agent; provided that in no event shall the aggregate amount of all such costs, fees and expenses exceed $100,000. Any Notice and Administration Costs exceeding $100,000 may only be paid pursuant to further order of the Court.  In the event that the Settlement is terminated pursuant to the terms of this Settlement, all Notice and Administration Costs properly paid or incurred, including any related fees, shall not be returned or repaid to the Defendants.

(z)    "Offerings" means Home Equity Mortgage Trust Series 2006-4, 2006-5, 2006-6, and 2007-2.

(aa)    "Person" and "Persons" means any individual, corporation, limited liability company, limited partnership, partnership, professional corporation, association, affiliate, joint stock company, estate, trust, unincorporated association, entity, government and any political subdivision thereof, or any other type of business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

(bb)    "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund set forth in the Notice, or such other plan of allocation that the Court approves. The Plan of Allocation is not a condition to the Settlement, and Defendants shall have no responsibility for, and no liability with respect thereto, as set forth in ¶ 26 below.

(cc)    "Preliminary Approval Order" means the order to be entered by the Court certifying the Settlement Class, preliminarily approving the Settlement, and directing that Notice be provided to the Settlement Class, which, subject to the approval of the Court, shall be substantially in the form attached hereto as Exhibit A.

(dd)    "Proof of Claim Form" means the form provided to Settlement Class Members by the Claims Administrator for purposes of submitting a Claim, substantially in the form attached hereto as Exhibit A-3.

10

(ee)    "Registration Statement" means the registration statement and accompanying prospectus filed with the Securities and Exchange Commission by Credit Suisse First Boston Mortgage Securities Corporation on August 10, 2006 (No. 333-135481).

(ff)    "Released Claims" means any and all claims, demands, rights, liabilities and causes of action of every nature and description, whether known or unknown, suspected or unsuspected, contingent or non-contingent, matured or unmatured, whether or not concealed or hidden, which now exist, or heretofore have existed, or can, shall or may exist, whether arising under federal, state, common or foreign law or at equity, against the Released Parties and arising from or relating in any way to either:  (i) the purchase or other acquisition of an interest in HEMT 2006-4, HEMT 2006-5, HEMT 2006-6, and HEMT 2007-2 Certificates during the Class Period; or (ii) the acts, failures to act, transactions, facts, events, matters, disclosures, statements, occurrences, representations, or omissions that were or could have been alleged by Lead Plaintiff in the Action.  The Released Claims include Unknown Claims but exclude claims to enforce the Settlement. The Settlement shall include a bar order that permanently enjoins all members of the Settlement Class from instituting any action against Defendants with respect to the Released Claims.

(gg)    "Released Party" and "Released Parties" means (i) each Defendant and each and all his, her or its respective past, current, and future parents, subsidiaries, affiliates, successors, assigns, related entities, directors, officers, employees, employers, attorneys, accountants, financial advisors, commercial bank lenders, insurers, investment bankers, representatives, general and limited partners and partnerships, heirs, executors, administrators, successors, affiliates, agents, spouses, associates and assigns of each of them or any trust of which any Released Parties are the settlor or which is for the benefit of any Released Parties and/or members of his or her family, and (ii) any entity in which any such Released Parties has a controlling interest.

11

(hh)   "Settlement" or "Stipulation" means this Stipulation and Agreement of Settlement and the settlement contained herein.

(ii)   "Settlement Amount" means one hundred and ten million U.S. dollars ($110,000,000.00).

(jj)   "Settlement Class" means all Persons that (1) purchased or otherwise acquired an interest in any Certificates in Home Equity Mortgage Trust ("HEMT") 2006-5 on or before June 3, 2008; or (2) purchased or otherwise acquired an interest in any Certificates in HEMT 2006-4, HEMT 2006-6, or HEMT 2007-2 on or before March 23, 2009, *but* excluding: (i) Persons timely and validly requesting exclusion from the class pursuant to and in accordance with the terms of the Preliminary Approval Order or who previously released Securities Act claims against any of the Defendants relating to HEMT 2006-4, HEMT 2006-5, HEMT 2006-6 or HEMT 2007-2; and (ii) any of the Defendants in the Action, their officers and directors at all relevant times, members of their immediate families, and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest, *except* for any Investment Vehicle, to the extent such entities themselves had a proprietary (*i.e.* for their own account) interest in the Certificates.

(kk)   "Settlement Class Member" means a Person or entity that is a member of the Settlement Class and that does not exclude himself, herself, or itself by timely filing a request for exclusion pursuant to and in accordance with the requirements set forth in the Preliminary Approval Order.

(ll)   "Settlement Fund" means the Settlement Amount plus any interest earned thereon after it is deposited into the Escrow Account.

(mm)   "Settling Parties" means (i) Lead Plaintiff on behalf of itself and the Settlement Class, and (ii) Defendants.

12

(nn)   "<u>Summary Notice</u>" means the Summary Notice of the Pendency of Class Action and Proposed Settlement, Preliminary Approval Order, Settlement Fairness Hearing, and Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, which shall be substantially in the form attached hereto as Exhibit A-2, to be published as set forth in the Preliminary Approval Order.

(oo)   "<u>Taxes</u>" means any taxes due and payable with respect to the income earned by the Settlement Fund, including any interest or penalties thereon.

(pp)   "<u>Tax Expenses</u>" means any reasonable expenses and costs incurred in connection with the payment of Taxes or the preparation of tax returns, including, without limitation, reasonable expenses of tax attorneys and/or accountants and/or other advisors and reasonable expenses relating to the filing of or failure to file all necessary or advisable tax returns.

(qq)   "<u>Unknown Claims</u>" means any and all Released Claims which Lead Plaintiff and/or any Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Parties, or might have affected his, her or its decision not to object to this Settlement or not exclude himself, herself or itself from the Settlement Class.

## **<u>CLASS CERTIFICATION</u>**

2.      Solely for purposes of this Settlement and for no other purpose, and subject to approval by the Court, the Settling Parties stipulate and agree to: (a) certification of the Settlement Class as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class; (b) appointment of the Class Representative as the representative of the Settlement Class; and (c) appointment of Lead Counsel as class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure. Certification of the Settlement Class and appointment of Lead Counsel and the Class Representative shall be binding only with

respect to the Settlement of the Action.  Should the Settlement Class not be certified, or should any court materially amend the scope of the Settlement Class, the Settling Parties reserve the right to terminate this Settlement. In the event this Settlement is terminated, or a Judgment and approval of the Settlement and dismissal of the Action for any reason does not occur, certification of the Settlement Class shall be nullified, and the Action shall proceed as though the Settlement Class had never been certified.  In such event, Defendants may oppose any motion for class certification and/or may seek de-certification of any class previously certified in the Action; the Settling Parties reserve all their rights regarding class certification in the Action; and neither Lead Plaintiff nor Defendants shall suggest in any submission in the Action that any inference of any kind should be drawn from the Settlement Class proposed in this Settlement.

### SCOPE AND EFFECT OF SETTLEMENT

3.      The obligations incurred pursuant to this Settlement are, subject to approval by the Court and such approval becoming Final, in full and final disposition of the Action and all Released Claims against all Released Parties.

4.      Upon the Effective Date, Lead Plaintiff shall have, and all other Settlement Class Members shall be deemed to have and by operation of the Judgment shall have—on behalf of themselves and each of their respective personal representatives, spouses, domestic partners, heirs, executors, trustees, administrators, predecessors, successors and assigns, whether or not such Person submits a Proof of Claim form—fully, finally and forever waived, released, discharged and dismissed each and every Released Claim against each and every Released Party, with prejudice and on the merits, and without costs to any party, and shall forever be enjoined from pursuing any such Released Claims in any forum, of any kind, whether directly or indirectly, whether on their own behalf or otherwise.  By entering into this Settlement, Lead Plaintiff represents and warrants that it has not assigned, hypothecated, conveyed, transferred or

14

otherwise granted or given any interest in the Released Claims or any of them, to any other Person.

5.      With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff expressly waives, and each Settlement Class Member shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, to the fullest extent permitted by law, the provisions, rights and benefits of California Civil Code § 1542, and of any U.S. federal or state law, or principle of common law or the law of any foreign jurisdiction, that is similar, comparable, or equivalent to Section 1542 of the California Civil Code, which provides, in relevant part:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiff and other Settlement Class Members, or certain of them, may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiff and the Settlement Class Members, and each of them, upon the Effective Date, by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, claims relating to conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Lead Plaintiff acknowledges, and Settlement Class Members by law and operation of the Judgment shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the

15

definition of Released Claims was separately bargained for and was a material element of the Settlement.

6.      Upon the Effective Date, Lead Plaintiff and each and all other Settlement Class Members, and anyone claiming through or on behalf of any of them, in accordance with the terms of the proposed Judgment attached hereto as Exhibit B, are forever barred and enjoined from commencing, instituting, maintaining, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting against any Released Party any Released Claim, including, without limitation, instigating, voting in favor of or otherwise supporting the assertion of any claim seeking repurchase or substitution (or other contractual or "putback" rights) with respect to any residential mortgage loan included in any of the Offerings other than in any action filed prior to November 3, 2015 asserting such claims.  Each Settlement Class Member is further forever barred and enjoined from now or at any time in the future acting in any way to secure or aid in the formation of a quorum of certificateholders relating to an action seeking any recovery with respect to the HEMT 2006-4, HEMT 2006-5, HEMT 2006-6, and/or HEMT 2007-2 Certificates, including, but not limited to, contributing or allocating their voting rights as purchasers or holders of the HEMT 2006-4, HEMT 2006-5, HEMT 2006-6, and/or HEMT 2007-2 Certificates to any effort or undertaking, whether individually or collectively with other holders of voting rights in the Certificates, requesting or pursuing the repurchase or substitution of mortgage loans in relation to the HEMT 2006-4, HEMT 2006-5, HEMT 2006-6, and/or HEMT 2007-2 Certificates, or indemnifying or otherwise providing funding or financial support to a trustee or anyone else acting on behalf of any residential mortgage-backed securities trusts that issued the HEMT 2006-4, HEMT 2006-5, HEMT 2006-6, and/or HEMT 2007-2 Certificates.  Entry of such a bar order by the Court is a material term of this Settlement. This release shall not preclude any Settlement Class Member from receiving distributions of any repurchase or substitution proceeds

16

made to certificateholders in the ordinary course arising from claims filed prior to November 3, 2015, seeking repurchase or substitution of mortgage loans or damages in relation to HEMT 2006-4, HEMT 2006-5, HEMT 2006-6, and/or HEMT 2007-2, under the contracts applicable to the particular transactions. Any Settlement Class Member entitled to such a distribution must offset the share of the repurchase or substitution proceeds to which it is entitled for value received by them pursuant to this Settlement.

7.       Upon the Effective Date, each of the Released Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged Lead Plaintiff, each and all of the Settlement Class Members, and Lead Counsel from all claims arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Action or the Released Claims.  For the avoidance of any doubt, the releases provided for in this paragraph shall exclude claims to enforce the Settlement.

**DATE AND FORM OF PAYMENT OF SETTLEMENT CONSIDERATION**

8.       In full and complete settlement of the Released Claims, Credit Suisse will cause to be wired the Settlement Amount into the Escrow Account to create the Settlement Fund within ten (10) business days after the latest of (i) entry of the Preliminary Approval Order by the Court, and (ii) receipt by Defendants' Counsel from Lead Counsel of full and complete wiring instructions necessary for such payment and an executed Form W-9.  The Settlement Amount shall be released to Lead Counsel immediately upon the Effective Date, for it to finalize distribution to the members of the Settlement Class, but under no circumstances before such date, except that Lead Plaintiff's attorneys' fees and Litigation Expenses shall be paid from the Settlement Fund within ten (10) business days after both the Judgment of the District Court approving the Settlement and an order of the District Court approving Lead Counsel's request for attorneys' fees and Litigation Expenses, subject to an undertaking to repay such amounts, in accordance with ¶ 22 of this Stipulation, if the Effective Date does not occur, or the Judgment or

17

order granting Lead Plaintiff's attorneys' fees and Litigation Expenses is reversed or modified by a Final, non-appealable order, or the Settlement is terminated or canceled for any reason. If the Settlement Amount is not deposited into the Escrow Account by such date, Lead Plaintiff reserves the right to either: (i) move to enforce the Settlement, including seeking interest on any unpaid amount; or (ii) terminate the Settlement, in which case ¶ 37 below shall govern.

## USE AND TAX TREATMENT OF SETTLEMENT FUND

9.      The Settlement Fund shall be held and invested in the Escrow Account as provided in ¶ 10 hereof. If the Settlement becomes Final, any interest earned on the Settlement Fund shall be for the benefit of the Settlement Class. If the Settlement does not become Final and the Settlement is terminated for any reason, the Settlement Fund shall be returned to Defendants, together with any interest earned on the Settlement Fund, less any Notice and Administration Costs actually incurred but not exceeding $100,000 absent approval by the Court, as set forth in ¶ 1(y) of this Settlement Agreement.

10.      The Escrow Agent shall invest funds in the Escrow Account in instruments backed by the full faith and credit of the United States government or an agency thereof (or a mutual fund invested solely in such instruments), or deposit some or all of the funds in accounts up to the limit of Federal Deposit Insurance Corporation insurance. The Released Parties and Defendants' Counsel shall have no responsibility for, interest in, or liability with respect to the investment decisions of the Escrow Agent. The Settlement Fund shall bear all risks related to investment of the Settlement Amount.

11.      The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation or with the written agreement of Lead Counsel and Defendants' Counsel.

12.      Subject to the terms and conditions of this Settlement, the Settlement Fund shall be used to pay: (i) Taxes and Tax Expenses; (ii) Notice and Administration Costs; and (iii) any attorneys' fees and Litigation Expenses awarded by the Court. In no event shall the Released

18

Parties bear any responsibility for any fees, costs or expenses beyond payment of the Settlement Amount.

13.     After (i) the Judgment becomes Final, and (ii) entry by the Court of a Class Distribution Order approving distribution of the Net Settlement Fund to the Settlement Class, the Claims Administrator shall distribute the Net Settlement Fund to Authorized Claimants in accordance with the terms of such Class Distribution Order; provided, however, that any amounts in the Escrow Account necessary for payment of Taxes and Tax Expenses shall remain in the Escrow Account for such purpose.

14.     Except as provided herein, the Net Settlement Fund shall remain in the Escrow Account prior to the distribution. All funds held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds are distributed or returned pursuant to the terms of this Settlement.

15.     The Parties agree that the Settlement Fund is intended to be a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1 and that the Claims Administrator, as "administrator" of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund. Such returns shall be consistent with this paragraph and in all events shall reflect that all Taxes on the income earned on the Settlement Fund shall be paid out of the Settlement Fund as provided by ¶ 16 herein. The Claims Administrator shall also be solely responsible for causing payment to be made from the Settlement Fund of any Taxes and Tax Expenses owed with respect to the Settlement Fund, and is authorized to withdraw, without prior order of the Court, from the Settlement Fund such amounts as are necessary to pay Taxes and Tax Expenses. Defendants will provide to the Claims Administrator the statement described in Treasury

19

Regulation § 1.468B-3(e). The Claims Administrator, as "administrator" of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation-back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

16.     All Taxes (including any interest or penalties) and Tax Expenses shall be considered to be a cost of administration of the Settlement and shall be paid out of the Settlement Fund. The Released Parties shall not have any responsibility for, and no liability with respect to, payment of any such Taxes or Tax Expenses, and shall have no responsibility for, and no liability with respect to, the acts or omissions of the Claims Administrator, Lead Counsel or their agents, with regard to Taxes and Tax Expenses. The Parties agree to cooperate with each other, and their tax attorneys and accountants, to the extent reasonably necessary to carry out the terms of this Settlement with regard to Taxes and Tax Expenses.

17.     This Settlement is not a claims-made settlement and, if all conditions of the Settlement are satisfied, the Judgment is entered and becomes Final, no portion of the Settlement Fund will be returned to Defendants, irrespective of the number of Claims filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund. If any portion of the Net Settlement Fund remains following distribution pursuant to ¶ 23 and is of such an amount that in the discretion of the Claims Administrator it is not cost effective or efficient to redistribute to the Settlement Class, then such remaining funds, after payment of any further Notice and Administration Costs and Taxes and Tax Expenses, shall be donated to a non-profit charitable organization selected by Lead Plaintiff and approved by the Court.

18.     The finality of the Settlement shall not be conditioned on any ruling by the District Court concerning the Plan of Allocation or any award of attorneys' fees or reimbursement of Litigation Expenses. Any order or proceeding relating to a request for approval of the Plan of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate the Settlement or affect or delay the Effective Date or the effectiveness or finality of the Judgment and the release of the Released Claims. There shall be no distribution of any of the Settlement Fund to any Settlement Class Member until the Plan of Allocation is finally approved and such order of approval is affirmed on appeal and/or is no longer subject to review by appeal or *certiorari*, and the time for any petition for rehearing, appeal, or review, by *certiorari* or otherwise, has expired. Again, and for the avoidance of doubt, the Released Parties and Defendants' Counsel have no responsibility for, and no liability with respect to, the investment or distribution of the Settlement Amount.

## ATTORNEYS' FEES AND LITIGATION EXPENSES

19.     Lead Counsel may apply to the Court for an award from the Settlement Fund of attorneys' fees and Litigation Expenses. Litigation Expenses may include reimbursement of the expenses of Lead Plaintiff in accordance with 15 U.S.C. § 77z-1(a)(4).

20.     The Released Parties will take no position on Lead Counsel's request for attorneys' fees or Litigation Expenses, and shall have no responsibility for, and no liability with respect to, the attorneys' fees or Litigation Expenses that the Court may award.

21.     The procedure for and amounts of any award of attorneys' fees and Litigation Expenses, and the allowance or disallowance by the Court thereof, shall not be a condition of the Settlement. Lead Counsel shall request that its application for an award of attorneys' fees and Litigation Expenses be considered by the Court separately from the Court's consideration of the fairness and adequacy of the Settlement. Any order or proceedings relating to such request, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate

21

to terminate the Settlement or affect the release of the Released Claims. The finality of the Settlement shall not be conditioned on any ruling by the Court concerning Lead Counsel's application for attorneys' fees and Litigation Expenses.

22.      Within ten (10) calendar days after both the Judgment and an order by the Court approving Lead Counsel's attorneys' fees and Litigation Expenses become Final, any awarded attorneys' fees and Litigation Expenses shall be paid to Lead Counsel from the Escrow Account. Such attorneys' fees and Litigation Expenses awarded by the Court may also be paid following entry of the Judgment, notwithstanding the existence of or pendency of any appeal or collateral attack on the Settlement or any part thereof, if and only if Lead Counsel executes an unconditional guaranty of repayment. In the event that the Effective Date does not occur, or the Judgment or the order granting Lead Counsel's attorneys' fees and Litigation Expenses is reversed or modified by a Final, non-appealable order, or the Settlement is terminated or canceled for any reason, and in the event that attorneys' fees and Litigation Expenses have been paid out of the Escrow Account to any extent, then Lead Counsel shall be obligated and do hereby agree, within ten (10) calendar days from receiving notice from Defendants' Counsel or from the Court, to refund to the Escrow Account such attorneys' fees and Litigation Expenses that have been paid, plus interest thereon at the same rate as would have been earned had those sums remained in the Escrow Account.

## ADMINISTRATION OF THE SETTLEMENT

23.      The Claims Administrator, subject to the supervision of Lead Counsel and the jurisdiction of the Court, shall administer and calculate the Claims submitted by Settlement Class Members, oversee distribution of the Net Settlement Fund to Authorized Claimants, and perform all claims administration procedures necessary or appropriate in connection therewith. The Claims Administrator shall receive and administer Claims in accordance with the Plan of

Allocation approved by the Court. The proposed Plan of Allocation is set forth in the Notice attached hereto as Exhibit A-1.

24.     The Released Parties shall have no liability, obligation or responsibility whatsoever to any person, including, but not limited to, Settlement Class Members, the Escrow Agent, or the Claims Administrator, in connection with the administration of the Settlement, the processing of claims, or the disbursement of the Net Settlement Fund including, without limitation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.  The Released Parties take no position with respect to the provisions of this Stipulation governing these issues.

25.     Lead Counsel shall cause the Claims Administrator to mail the Notice to those Settlement Class Members who may be identified through the trading records produced in this Action, and to publish the Summary Notice, pursuant to the terms of the Preliminary Approval Order entered by the Court.

26.     The allocation of the Net Settlement Fund among Authorized Claimants is a matter separate and apart from the proposed Settlement between Defendants and Lead Plaintiff, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement. It is not a condition of this Settlement that any particular plan of allocation be approved by the Court. None of the Settling Parties may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in this Action. The Released Parties shall have no responsibility for, and no liability with respect to, the allocation of the Net Settlement Fund, nor shall they object to the Plan of Allocation proposed by Lead Plaintiff.

27.     Any Settlement Class Member who does not timely submit a valid Proof of Claim Form by the deadline set by the Court will not be entitled to receive any distribution from the Net

Settlement Fund but will nevertheless be bound by all of the terms of the Settlement, including the terms of the Judgment to be entered in the Action and the releases provided for therein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Released Party concerning any Released Claim.

28.     By submitting a Claim, a Settlement Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claim, including, but not limited to, the releases and bar order provided for in the Judgment, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to their status as a Settlement Class Member and the validity and amount of their Claim. No discovery shall be allowed on the merits of this Action or this Settlement in connection with the processing of Proof of Claim Forms.

29.     Lead Counsel will apply to the Court, with reasonable notice to the Defendants, for a Class Distribution Order, *inter alia*: (i) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (ii) approving payment of any outstanding Notice and Administration Costs from the Escrow Account; and (iii) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants.

30.     Payment pursuant to the Class Distribution Order shall be final and conclusive against any and all Settlement Class Members. All Settlement Class Members who did not submit a Claim or whose Claim was not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but shall be bound by all of the terms of this Settlement, including the terms of the Judgment and the releases provided for therein, and will be permanently barred and enjoined from bringing any action against any Released Party concerning any Released Claim.

31.     All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

## REQUESTS FOR EXCLUSION

32.     A Person who otherwise would be a member of the Settlement Class who requests exclusion from the Settlement Class must timely provide the following information to the Claims Administrator: (i) name; (ii) address; (iii) telephone number; (iv) identity and original face value of the Certificates purchased (or otherwise acquired) or sold; (v) prices or other consideration paid or received for such Certificates; (vi) the date of each purchase or sale transaction; and (vii) a statement that the Person wishes to be excluded from the Settlement Class. Unless otherwise ordered by the Court, any Person who does not timely submit a written request for exclusion as provided by this section shall be bound by the Settlement. Lead Plaintiff shall request that the deadline for submitting requests for exclusion be twenty-eight (28) calendar days prior to the Final Approval Hearing.

33.     The Claims Administrator shall scan and electronically send copies of all requests for exclusion in PDF format (or such other format as shall be agreed) to Defendants' Counsel and to Lead Counsel expeditiously (and not more than three (3) business days) after the Claims Administrator receives such a request. Lead Counsel will include in its motion in support of final approval of the Settlement a list of all Persons who have requested exclusion from the Settlement Class, and shall certify that copies of all requests for exclusion received by the Claims Administrator have been provided to Defendants' Counsel.

## PRELIMINARY APPROVAL OF THE SETTLEMENT

34.     Promptly after execution of this Settlement, Lead Plaintiff, by and through Lead Counsel, with Defendants' Counsel's consent, shall submit the Settlement together with its

25

Exhibits to the Court and shall move for entry of the Preliminary Approval Order, among other things, preliminarily approving the Settlement, certifying the Settlement Class solely for purposes of this Settlement, approving the contents and method of distribution of the Notice and Summary Notice, and setting a date for the Final Approval Hearing.

## JUDGMENT APPROVING THE SETTLEMENT

35.    Lead Plaintiff, by and through Lead Counsel, with Defendants' Counsel's consent, shall request that the Court, if it approves the Settlement following the Final Approval Hearing, enter the Judgment. The Settlement is expressly conditioned upon, among other things, the entry of a Judgment substantially in the form attached hereto as Exhibit B and in all respects consistent with this Settlement.

## EFFECTIVE DATE OF THE SETTLEMENT, AND TERMINATION

36.    The Effective Date of the Settlement shall be the first date by which all of the following have occurred:

(a)    The Court has entered the Preliminary Approval Order;

(b)    Defendants have paid the Settlement Amount into the Escrow Account;

(c)    Defendants have not exercised their option to terminate the Settlement pursuant to ¶ 38 herein;

(d)    The Court has approved the Settlement following notice to the Settlement Class and the Final Approval Hearing in accordance with Rule 23 of the Federal Rules of Civil Procedure, and has entered the Judgment; and

(e)    The Judgment has become Final, as defined in ¶ 1 (n) herein.

37.    Defendants and Lead Plaintiff each shall have the right to terminate the Settlement by providing written notice of their election to do so to the other within twenty (20) calendar days of the date on which: (a) the Court declines to enter the Preliminary Approval Order in any material respect; (b) the Court refuses to grant final approval of this Settlement or

any material part of it; (c) the Court declines to enter the Judgment in any material respect; (d) the Effective Date of the Settlement does not occur; or (e) the payment of the Settlement Amount is not satisfied in accordance with the terms herein. In addition, Defendants may also terminate the Settlement in accordance with ¶ 38. The foregoing list is not intended to limit or impair the parties' rights under the law of contracts of the State of New York with respect to any breach of this Settlement. In the event the Settlement is terminated for any reason, the provisions of ¶¶ 9, 10, 11, 14, 22, 24, 39, 40, and 45 shall survive termination.

38.     Defendants shall have the option to terminate the Settlement in the event that the dollar amount of  principal balance of the Certificates for Settlement Class Members who would otherwise be entitled to participate in the Settlement as Settlement Class Members, but who timely and validly request exclusion in accordance with the terms of this Settlement, in the aggregate equals or exceeds the threshold (the "Opt-Out Threshold") as calculated pursuant to a separate agreement (the "Supplemental Agreement") executed between Lead Counsel and Defendants' Counsel, which is incorporated by reference into this Settlement. The Opt-Out Threshold may be disclosed *in camera* to the Court for purposes of approval of the Settlement, as may be required by the Court, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court so as to maintain the confidentiality of the Opt-Out Threshold.

39.     Except as otherwise provided herein, in the event the Settlement is terminated, the Settling Parties reserve their rights to proceed in all respects as if this Settlement had not been entered into and without any prejudice in any way from the negotiation, fact or terms of this Settlement; provided, however, that the Settling Parties will in good faith revisit the scheduling order concerning any remaining pretrial proceedings and for the trial of this Action.

27

## NO ADMISSION OF WRONGDOING

40.     Whether or not the Settlement is approved by the Court, and whether or not the Settlement is consummated, the fact and terms of this Settlement, including Exhibits, all negotiations, discussions, drafts and proceedings in connection with the Settlement, and any act performed or document signed in connection with the Settlement:

(a)     shall not be offered or received against the Released Parties, Lead Plaintiff or the other Settlement Class Members as evidence of, or be deemed to be evidence of, any presumption, concession or admission by any of the Released Parties or by Lead Plaintiff or the other Settlement Class Members with respect to the truth of any fact alleged by Lead Plaintiff or the validity, or lack thereof, of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault or wrongdoing of the Released Parties;

(b)     shall not be offered or received against the Released Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Released Party, or against Lead Plaintiff or any of the other Settlement Class Members as evidence of any infirmity in the claims of Lead Plaintiff and the other Settlement Class Members;

(c)     shall not be offered or received against the Released Parties, Lead Plaintiff or the other Settlement Class Members as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the parties to this Settlement, in any arbitration proceeding or other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement; provided, however, that if this Settlement is

28

approved by the Court, the Released Parties may refer to it to effectuate the liability protection granted them hereunder;

(d)    shall not be construed against the Released Parties, Defendants' Counsel, Lead Counsel or Lead Plaintiff or the other Settlement Class Members as an admission or concession that the consideration to be paid hereunder represents the amount which could be or would have been recovered after trial; and

(e)    shall not be construed as or received in evidence as an admission, concession or presumption against Lead Plaintiff or the other Settlement Class Members or any of them that any of their claims are without merit or that damages recoverable under the Third Amended Complaint would not have exceeded the Settlement Amount.

## MISCELLANEOUS PROVISIONS

41.    All of the Exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

42.    The Settling Parties intend this Settlement to be a final and complete resolution of all disputes asserted or that could be asserted by the Lead Plaintiff or any other Settlement Class Members in the Action or with respect to all Released Claims.  Except in the event of termination of this Settlement, Lead Plaintiff and Defendants agree not to assert under Rule 11 of the Federal Rules of Civil Procedure or any similar law, rule or regulation, that the Action was brought or defended in bad faith or without a reasonable basis. The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated at arm's length and in good faith by the Settling Parties and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with their respective experienced legal counsel.

43.    This Settlement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Settling Parties or their successors-in-interest.

44.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

45.     Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claim or of any wrongdoing or liability of any of the Released Parties; or (b) is or may be deemed to be or may be used as an admission or evidence of any fault or omission of any of the Released Parties in any civil, criminal or administrative proceeding in any court, any arbitration proceeding or any administrative agency or other tribunal, other than in such proceedings as may be necessary to consummate or enforce the Settlement or the Judgment.

46.     The waiver by one party of any breach of this Settlement by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement.

47.     This Settlement and its Exhibits constitute the entire agreement among the Parties, and no representations, warranties or inducements have been made to any party concerning this Settlement or its Exhibits, other than the representations, warranties and covenants contained and memorialized in such documents.

48.     This Settlement may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via e-mail. All executed counterparts and each of them shall be deemed to be one and the same instrument.

49.     Lead Plaintiff agrees that it will use its best efforts to obtain all necessary approvals of the Court required by this Settlement, and the Defendants agree to provide such support as may be reasonably requested by Lead Plaintiff.

50.     Each signatory to this Settlement represents that he or she has authority to sign this Settlement on behalf of Lead Plaintiff or Defendants, as the case may be, and that they have

2076713.1

the authority to take appropriate action required or permitted to be taken pursuant to this Settlement to effectuate its terms.

51.     This Settlement shall be binding upon and shall inure to the benefit of the successors and assigns of the parties hereto, including all Released Parties and any corporation, partnership, or other entity into or with which any party hereto may merge, consolidate or reorganize.

52.     Notices required by this Settlement shall be submitted either by any form of overnight mail, electronic e-mail, facsimile, or in person to each of the signatories below.

53.     The administration, consummation and enforcement of the Settlement shall be under the authority of the Court and the parties intend that the Court retain jurisdiction for the purpose of, *inter alia*, entering orders, providing for awards of attorneys' fees and Litigation Expenses, and enforcing the terms of the Settlement.

54.     The construction, interpretation, operation, effect and validity of this Settlement, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of New York without regard to that State's choice-of-law principles, except to the extent that federal law requires that federal law govern.

55.     This Settlement shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations among the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Settlement.

IN WITNESS WHEREOF, the parties hereto have caused this Settlement to be executed, by their duly authorized attorneys as of December 21, 2015.

COHEN MILSTEIN SELLERS & TOLL PLLC

/s/ Joel P. Laitman
Joel P. Laitman
jlaitman@cohenmilstein.com
Christopher Lometti
clometti@cohenmilstein.com
Michael B. Eisenkraft
meisenkraft@cohenmilstein.com
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797

Steven J. Toll (pro hac vice)
stoll@cohenmilstein.com
Times Wang (pro hac vice)
twang@cohenmilstein.com
1100 New York Avenue, N.W.
East Tower, Ste. 500
Washington, DC 20005
Telephone: (202) 408-4600

*Counsel for Lead Plaintiff and the Class*

MORGAN, LEWIS & BOCKIUS LLP

/s/ Jeffrey Q. Smith
Jeffrey Q. Smith
jeffrey.smith@morganlewis.com
Jennifer Hurley McGay
jennifer.mcgay@morganlewis.com
Jawad Muaddi
jawad.muaddi@morganlewis.com
101 Park Avenue
New York, New York 10178-0060
Telephone: (212) 309-6000

*Counsel for Defendants*

32